LANDRY, Judge.
This is a habeas corpus proceeding where-
Relatrix, Bernice Lott, formerly married to and divorced from F. E. Courtney, seeks to recover custody and control of her three minor children from their step-mother, Mary Courtney, Respondent in writ, widow of said F. E. Courtney, now deceased. The trial court rendered judgment in favor of respondent continuing a prior decree granting custody of the children to appellee, Mrs. Courtney, and from said decision Relatrix has taken this appeal.
The case at bar appears novel in that, so far as we are aware, it presents for initial determination the rights of a natural mother to the custody of her children as opposed to those of a step-mother.
Narration in brief of the events preceding institution of the present habeas corpus proceeding is warranted to afford a clearer understanding of the issue of law involved herein. The children concerned in this controversy, namely, Betty Jo. Courtney, Davie Lee Courtney and Jackie Marie Courtney, ages 13, 9 and 8 years, respectively, were born of Relatrix’s marriage to F. E. Courtney, deceased, which union was dissolved by judgment rendered in favor of said decedent in 1961 on the ground of adultery, which judgment also awarded custody of the children in question to their now deceased father. Subsequent to his divorce from relatrix, decedent, F. E. Courtney, was married to respondent, Mary Courtney, with whom decedent lived until his demise on October 24, 1963. After decedent’s marriage to respondent, the children concerned lived with respondent and *491 their father until the latter’s death on the hereinabove mentioned date. In November, 1963, after Courtney’s death, respondent initiated proceedings in the Twenty-first Judicial District Court, Livingston Parish, to obtain care, custody and control of the minors in question. The matter was tried contradictorily with relatrix and resulted in judgment in favor of respondent stepmother granting her permanent care, custody and control of the children in question. Relatrix did not appeal the award of custody to respondent and that judgment has now become final. Relatrix then instituted the present habeas corpus proceeding to recover custody of her children from respondent and was unsuccessful in the Court below as hereinbefore previously mentioned.
In essence learned counsel for appellant maintains respondent should be relieved of the care, custody and control of said minors and their custody awarded relatrix for three reasons, namely: (1) Relatrix as the natural mother has the absolute right to custody as against all other parties unless proven morally unfit; (2) The best interest of the children will be served by awarding their custody to appellant; (3) Respondent is morally unfit to have the custody of minor children; and (4) Respondent refuses to permit Relatrix reasonable opportunity to visit her children and is engaging in conduct and practices designed to alienate the children from their natural mother.
On the other hand, Respondent has made no effort to re-introduce evidence of Re-latrix’s alleged moral unfitness which issue was considered in the previous contest between the litigants in which Respondent was granted custody. Instead, appellee relies upon the judgment rendered in November, 1963, by which she was awarded custody.
After the trial below, our esteemed colleague of the trial court vacated the rule and discharged the writ on the finding that the former award of custody to Respondent was in the best interest of the children. On this determination he decreed that his former award of custody to respondent “be continued in full force and effect until further orders of this Court.”
On this appeal relatrix specifies that the trial court erred in refusing to recognize the absolute right of the mother to custody of her children as their surviving parent; failing to award custody of the mother in a proceeding wherein her moral fitness was neither challenged nor attacked; and granting custody to respondent whom appellant maintains the record shows to be a person morally unfit to have the custody of minor children. In this latter regard, relatrix charges generally that respondent is a “bar and lounge butterfly and pick up for married men and who neglected tire children.”
It is settled jurisprudence that in cases involving custody of children the primary concern of the Court is the welfare and best interest of the children and this consideration must prevail over the parental right to custody in cases wherein the mentioned principles conflict. Dungan v. Dungan, 239 La. 733, 119 So.2d 843; Brode v. Hatcher, 233 La. 636, 97 So.2d 422; Lyckburg v. Lyckburg, La.App., 140 So.2d 487.
As a general rule in custody matters the mother is preferred above all others unless she be shown to be morally unfit. The reasons for the rule being that generally the mother is better suitable to rear and educate the children, attend to their personal needs, teach and instruct them along social, cultural and religious lines, guide them during their formative years and supervise their upbringing so as to insure their maturing as individuals of the highest character. Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456.
However, the rule hereinabove lastly stated is subject to the exception that it is without application in those cases wherein a change is sought in an order of custody previously granted. Decker v. Landry, 227 *492 La. 603, 80 So.2d 91; Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3; Matheny v. Matheny, 205 La. 869, 18 So.2d 324; Smith v. Smith, La.App., 141 So.2d 84; Lyckburg v. Lyckburg, 140 So.2d 487.
In support of the contention that relatrix has an absolute right to custody of her children in this proceeding, esteemed counsel for appellant cites and relies upon Lyckburg v. Lyckburg, supra, and Brode v. Hatcher, 233 La. 636, 97 So.2d 422. The Brode case, supra, is also relied upon by relatrix as authority for the contention the trial court erred in failing to award her custody because her moral fitness was not put at issue and the record affirmatively establishes her fitness. In this connection learned counsel for relatrix cites the following language from the Lyckburg case, supra:
“At the outset it should be borne in mind that we are here concerned with an initial award of custody and that, under such circumstances, it is the settled law of this state that the mother has paramount right to custody and will not be deprived thereof unless proven unfit to discharge such trust. Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456. Equally applicable to the instant case are the principles that in cases involving custody of children, the primary concern of the court is the welfare and best interest of the children and the mother should be awarded custody of young children unless she is shown to be morally unfit or otherwise unsuitable, Boatner v. Boatner, 235 La. 1, 102 So.2d 472; where the mother of a minor child is not shown to be unfit, she is generally the preferred parent in a matter of custody, Hathorn v. Hathorn, 237 La. 554, 111 So.2d 770; parents have a natural right to the care and custody of their children but such right is not absolute and must yield to the superior right of the state to promote, preserve and protect the moral, .mental and physical welfare of children, Dungan v. Dungan, 239 La. 733, 119 So.2d 843.”
It is to be noted, however, that the key phrase in the foregoing quotation is the introductory clause which qualifies the first sentence and clearly indicates the court was therein concerned with an initial award of custody. In the case at bar, however, we are concerned with an attempt to change custody previously awarded after full adjudication of the facts and issues. Of further significant note is the fact relatrix makes no reference to the previous contest between the parties at bar and proceeds as though the judgment awarding custody to respondent does not exist. Respondent, however, has specially pleaded the former judgment, and the District Court took judicial notice thereof by repeatedly referring to the former decree and commenting thereon throughout the trial below. We cannot ignore the prior judgment for reasons hereinafter discussed.
Counsel for appellant quotes the following from State ex rel. Brode v. Hatcher, 233 La. 636, 97 So.2d 422:
“We agree with the trial judge that in a case of this kind, involving the custody of a child, someone will be very badly hurt. However, our jurisprudence is well settled that:
‘ * * * the courts are not authorized to interfere with a parent’s authority over his or her children, except if the court is satisfied that he, or she, will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them. Ex parte Lincoln, 128 La. 278, 54 So. 818; State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411; State ex rel. Bethany v. Corley, 172 La. 266, 134 So. 87, and the burden is on those resisting the parent’s right *493 to show his or her disqualification or unfitness to have the custody of the child. State ex rel. Burleigh v. Savoie, 185 La. 985, 171 So. 98; State ex rel. Perdue v. Carkuff, 182 La. 920, 162 So. 729; Heitkamp v. Ragan, 142 La. 81, 76 So. 247. * * *’ State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760, 762 (Emphasis ours.)
In Heitkamp v. Ragan, 142 La. 81, 76 So. 247, we clearly stated:
‘The law clearly makes it the privilege and the duty of the father to rear and provide for his children; and, on the death of either spouse the tutorship of the minor children belongs of right to the surviving father or mother. C.C. 250. The child remains subject to the control of its parents, or the surviving parent, until his or her majority or emancipation. C.C. 216. And the right of appointing a tutor, whether a relation or a stranger, belongs exclusively to the father or mother dying last. C.C. 2577 ”
Counsel for appellant fails, however, to note the three paragraphs following the above quotation from the Brode case, supra, which clearly state that the right of a surviving parent to the custody of his or her minor children is paramount is nevertheless “is not an absolute one and must yield to the superior right of the State to deprive a parent of the custody of his child if the best interest and welfare of the child require it. (Cases cited.)” Appellant’s counsel also apparently fails to note that in the Brode case, supra, the matter was remanded to the lower court for a determination of the fitness of the surviving father’s sister who lived with him and would assist in rearing the child in question. It is to be further noted the Brode case, supra, was an instance of initial custody determination; it was not an effort to modify or change a prior award of custody.
Counsel for appellant also cites cases which may be divided in two general classifications. First, those holding that as between mother and father, it is in the best interest of a child that his custody should be awarded to the mother. Second, cases holding a parent has a paramount interest and right to custody of his or her children which right will not be interfered with except in instances where the court is satisfied that the parent will neglect the children or expose them to improper influences, in which latter event the court is justified in making other disposition of the children. These latter cases also hold that the burden rests on those opposing the right of parental custody to show the parent’s disqualification or unfitness. See Heitkamp v. Ragan, 142 La. 81, 76 So. 247; State v. Garza, 217 La. 532, 46 So.2d 760.
Unquestionably the cases cited by counsel for relatrix state the law which the district court was bound to apply in the initial custody proceeding between the litigants presently before the bar. Under the circumstances shown herein, we must assume that our able colleague below gave re-latrix the benefit of the applicable rules in the prior proceeding. The judgment adverse to relatrix was not appealed and became final before institution of the present action. The transcript, if any exists, of the evidence adduced in the prior proceeding was not introduced in this proceeding, therefore, we have before us no inkling of the evidence presented which custody was initially awarded respondent. We must, however, assume the judgment rendered was based on evidence which justified the trial court’s decision.
Appropos the case at bar is the following language contained in Smith v. Smith, La.App., 141 So.2d 84:
“Appellant cites the cases of Willis v. Willis, 209 La. 205, 24 So.2d 378, White v. Broussard, 206 La. 25, 18 So. 2d 641, and Cannon v. Cannon, 225 La. 874, 74 So.2d 147, as authority for his contention that a wife and mother* has *494 the paramount right to the custody of the minor child born of the marriage and this right can only be overcome by showing that the mother is unfit to care for the children. However, these cases are inapposite for the reason that the father in the instant case has a judicial decree granting him the custody of their minor child, whereas in the cited cases the matter was before the court for the first time.
The issue in this case is similar to that presented in the case of Gentry v. Gentry, La.App., 136 So.2d 418, wherein we held at page 421:
‘ * * * that a party seeking modification of a previous custody decree bears the burden of proving a material change in conditions and also proving that present conditions and circumstances are detrimental and inimical to the child’s welfare.
See also the cases of Decker v. Landry, 227 La. 603, 80 So.2d 91; Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3, and Matheny v. Matheny, 205 La. 869, 18 So.2d 324. Appellant has failed to carry this burden.”
In Gentry v. Gentry, La.App., 136 So.2d 418, we 'reviewed at length the principles of law applicable herein, as summarized in the quotation from the Smith case, supra.
 ' We see no reason to create an exception to the rule requiring the party seeking modification of a custody award to show a material change in status creating circumstances inimical to the child’s welfare, merely on, the ground the contest is between á natural parent and one not a p'arent. The obvious reason for the rule, irrespective of the relationship of the contending parties for custody, is that custody once fixed and established, should not be disturbed except in cases where its continuance will adversely affect the welfare of the child or children involved. Manifestly, to constantly and continually change custody upon slight pretext can only serve to keep the children in a state of unrest, anxiety and uncertainty in which they can experience no assurance of stability. To repeatedly uproot them from surroundings, friends and acquaintances to whom they have grown accustomed will only serve to promote emotional distress, interrupt their education and inculcate the feeling they are totally unwanted and unloved. These considerations, we believe, obtain irrespective of the parties vying for custody and should apply once custody is established albeit the controversy may arise between a natural parent and one unrelated to the minors involved.
Considering the present matter in the light of the rules hereinabove found applicable, we note that relatrix herein neither alleged nor attempted to show any change in the conditions which led to granting of custody of the children to respondent. Relatrix showed she is remarried and financially able to care for the children but these same conditions existed at the time custody was awarded respondent.
Appellant produced numerous witnesses, mostly relations of the children’s deceased father, who testified they felt the natural mother should have custody as opposed to a stepmother who was no blood relation. These same witnesses conceded, however, they were the same persons who voluntarily testified at the prior custody hearing that relatrix was unfit and the best interest of the children would be served by awarding their custody to respondent. One of the witnesses, decedent’s mother, testified she had even spoken to the trial judge privately and urged that he award custody of the children to respondent on the occasion of the first suit.
The substance of the testimony of the several witnesses produced by relatrix is that they changed their attitude because they do not have the opportunity to see the children as often as they would like and feel that the children are becoming estranged from the family. They readily ex- . *495 press the view they would have greater contact with the children if custody were awarded the mother.
The record, however, clearly preponderates in favor of the conclusion respondent has done nothing to alienate the children from their blood relatives. Similarly, the record is barren of credible evidence to support appellant’s charge that respondent is morally unfit, to retain custody of the children in question. There is, however, some evidence of a purely hearsay nature tending to indicate respondent was the subject of neighborhood gossip which the record shows to be without foundation. Respondent’s closest neighbors testified they were in a,position, to observe and hear the arrival and departure of respondent and her. friends at all times of day or night; they denied knowledge of any events, circumstances or actions on respondent’s part which would in any way support appellant’s charge of moral turpitude.
The record establishes that respondent has cared for the children to the best of her ability in accordance with her financial circumstances. She is very solicitous of their welfare and has made a concerted effort to instill in her wards a feeling of attachment and affection for their natural mother and blood relations, even to the point of insisting that the children visit their relatives when they are reluctant to do so. It appears respondent, is particularly attentive to the special needs of Davie, the 9 year old boy who is mentally retarded, has seriously impaired vision and requires constant supervision because of his inability to properly bathe himself and control his normal bodily functions without assistance and guidance. In this respect it appears respondent by her own efforts has materially improved the child’s speech, secured an operation which has greatly increased the sight in one eye and is considering additional surgery in an effort to' afford the ■child greater vision in the other eye.
From the record before us we discern no evidence of a material change in the conditions which existed when respondent was initially awarded custody in November, 1963. Moreover, nothing in the record herein indicates the present circumstances and environment in which the children are living is detrimental or inimical to their safety or welfare. The fact that some of the relatives who heretofore felt respondent was better able to care for the children have since changed their minds is not the sort of change envisioned by the rule applicable to the instant case.’
We readily concede judgments awarding custody of children are not irrevocable but rather are subject to modification when changes affecting their welfare necessitate removal of children from an unfavorable environment. On the other hand, judgments awarding custody, after a full hearing are not to be lightly ignored and will be disturbed only when it is clearly shown the welfare of the children so dictates because of a change which has intervened since the initial custody award. We have herein previously enumerated'the several reasons why we deem it inadvisable to constantly shift children back and forth between different custodians and do not deem it necessary to repeat them at this juncture.
Accordingly, the judgment of the trial court is affirmed at relatrix’s costs.
Affirmed.