BAILES, Judge.
This is a suit to obtain a legal custody ' of a six year old child instituted by the ; plaintiff-father against the defendant-mother. The trial court rendered judgment. in which the father was granted the custody, reserving to the mother the identical' visitation rights formerly granted to the father. The defendant appeals.
The marriage between plaintiff and defendant was dissolved by a divorce rendered by the Chancery Court of Pulaski County, Arkansas on August 12, 1960. The custody of Stephanie Ransom, the only issue of this marriage was awarded to the defendant herein, with visitation rights reserved to the father, plaintiff herein. Both plaintiff and defendant subsequently contracted another marriage and both reside in East Baton Rouge Parish; plaintiff married Mrs. Patricia Ransom, and the defendant married a Mr. George Mitchell. There is no issue of plaintiff’s marriage to his present wife, however, a son has been born of defendant’s marriage to Mr. Mitchell.
This suit was instituted by a rule nisi to amend and change the custody order of the Arkansas divorce judgment. It was filed on June 23, 1965, and was tried on September 29, 1965. In this action, plaintiff is seeking the custody of his minor daughter on the grounds that defendant had previously filed suit for a separation from her husband, George Mitchell, alleging that the latter had often threatened defendant and her minor children (which included plaintiff’s little daughter) to such extent as to place her in fear of her own safety as well as that of her children; that defendant has stated on many occasions that life with George Mitchell was “impossible;” that she has reconciled with her husband and thereby has placed plaintiff’s child in an environment detrimental to the welfare and best interest of the said child, and that defend *361 ant is not a fit person to have the custody of the child for she has been guilty of adulterous conduct. Plaintiff further alleged that defendant placed the child in his custody in December, 1964, where she remained until removed by defendant and her husband on June 21, 1965, without consent or permission of plaintiff.
The record reflects that several suits have been filed by and against the defendant wherein she was a party to an action for separation from bed and board, all of which had termination short of any judgment granting such a separation. The record indisputably shows that defendant placed this child with the father during the pendency of one of these suits in December, 1964, and she resided continuously with him until June 21, 1965. During at least a part of this time, defendant was living separate and apart from her husband. It appears that defendant and her husband became reconciled shortly before June 21, 1965, and on the latter date she and Mr. Mitchell, in the absence of the plaintiff, took the child from a neighbor’s yard without the consent, knowledge or permission of plaintiff.
It was clearly shown, through the testimony of defendant herself, on cross-examination, that prior to June, 1965, defendant’s marriage to George Mitchell had been beset with marital discord and bitterness, and in general a very unwholesome environment prevailed.
The trial court rested its decision principally on its evaluation, appreciation and understanding of the conditions which prevailed in the Mitchell home. This is not a case in which the father is basing his claim for custody solely on the ground of moral unfitness of the mother. A most important factor is the history of marital discord, unrest and turnioil which has prevailed in the mother’s home.
There was proof, in fact an admission by the defendant-mother, that she had committed adultery with a man with whom she had carried on an illicit love affair for a period of about six months from* October, 1964 to March, 1965. During' at least a part of this time, defendant: was residing under the same roof with her husband. There was also proof that much discord existed between defendant and George Mitchell, her husband, during which the defendant had a firm basis on which to ground fears of violence to herself, as well as her own little son and the plaintiff’s daughter.
The trial court found, even though both defendant and her husband testified all was well between them now, that it would be unfair to this little girl to risk her to the future turmoil and unrest of the Mitchell home. We find nothing in the record, the testimony or in briefs to show any disqualification of the father or his home as a good environment in which to rear this child. The record does abound' with evidence to disqualify the mother’s home. The father has been a refuge to his daughter from the turbulence of the Mitchell home. The father, without one iota of evidence to the contrary, has demonstrated a deep and abiding love for his child. No adverse factors are found to exist in his home.
While defendant-appellant has not set forth, as such, any specification of error of the trial court, we deduct from her brief that her chief complaint is that the trial court abused its discretion by relying on evidence uf a home and moral situation which allegedly no longer existed at the time the custody rule was filed. The point made in defendant’s argument is that the court is restricted in its consideration of the circumstances to the facts and conditions existing when it is called to act. In support of this contention, defendant cites us to the case of Messner v. Messner (1960) 240 La. 252, 122 So.2d 90. A perusal of that case clearly demonstrates its inapplicability to the facts of the instant case. In the cited case, the plaintiff himself contributed, by the denial of financial assistance to his five children, *362 to the environmental situation which was corrected by the marriage of the children’s mother prior to the filing of the father’s suit for custody. The Messner case is not apropos to the instant case.
_ _ [2,3] In cases involving the custody of children, a grave and weighty responsibility rests with the courts. The courts are not given to take a child from its mother unless the evidence is strong and clear that a grave injustice would be done to the child for it to remain with the mother. The court is motivated by the forces ■which direct it to discern what is best ■for the child, insofar as is humanly possible. We find that the moral, mental and physical welfare of this child can best be served with her in the care, custody and under the control of the father. See Dungan v. Dungan (1960) 239 La. 733, 119 So.2d 843, and the cases cited therein.
' What is presented to us in this case is whether under the facts as shown by the record, as found by the trial court, and discussed in part by us herein, the trial judge abused his discretion when he awarded custody of this child to the father.
We find in Kieffer v. Heriard (1952) 221 La. 151, 58 So.2d 836 a discussion of the applicability of LSA-C.C. Article 157, which is the statutory law governing this case. Therein the court stated:
“Under the provisions of Article 157 of the Civil Code and the jurisprudence of this court, the custody of a child whose parents have been legally divorced is left largely to the discretion of the trial judge under circumstances shown to exist when he is called upon to act. This discretion is not, however, unlimited but is subject to review and control by this court. Nevertheless, this court is reluctant to upset a judgment of the trial court in matters involving the custody of a child and will not do so except in cases where it is shown that the judge has abused the discretion vested in him. See Black v. Black, 205 La. 861, 18 So.2d 321; Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456.
“It is also well established that the paramount consideration in determining to whom the custody of a child should be given after the divorce is the welfare and the best interest of the child, and under this rule this court has consistently awarded the custody of minor children to the mother unless she has been found to be morally unfit or unless she is incapable of taking care of the children. See Black v. Black, supra; White v. Broussard, 206 La. 25, 18 So.2d 641; Withrow v. Withrow, 212 La. 427, 31 So.2d 849; Sampognaro v. Sampognaro, supra.”
From our appreciation of the facts and circumstances of this case as disclosed by the record before us, we conclude that the trial judge did not abuse the discretion vested in him in awarding the child to the father.
We would remind the parties hereto that an award of custody of a child to one parent is not a matter foreclosed. The question of custody will be re-examined by the court at any time it is shown that there is a change of circumstances or conditions which would adversely effect the welfare of the subject child. See Willis v. Willis (1945) 209 La. 205, 24 So.2d 378.
For the foregoing reasons the judgment appealed from is affirmed. Appellant to pay all costs.
Affirmed.