FOURNET, Justice
 

 (dissenting).
 

 This is a habeas corpus proceeding in-, stituted by relator, Clifford Landry, to obtain the custody of his infant daughter, less than six months old, who is in the possession of the respondent, Anthony Robin, relator’s late wife’s father.
 

 Respondent, in his answer, claimed that he is entitled to the custody of the child for the reason (1) that he is her maternal grandparent, has taken care of and supported her since her birth and is willing to continue to provide and care for her; (2) that her father, relator, is not deserving of the trust of having the custody of his minor daughter because (a) he abandoned his wife, (b) that from the date of their separation until the date of his wife’s death he failed to provide for her, (c) that he did not pay any of the expenses incurred in her illness prior to and at the time of the birth of the child, all of which was provided for by respondent, (d) that he showed no interest in ,the child prior to the institution of these proceedings; and finally (3) that the child was left with respondent by its mother and that it is for the best interest of the child’s physical, as well as moral, welfare that she remain with respondent.
 

 The trial judge awarded the custody of the child to respondent and relator has appealed.
 

 The facts of the case, as disclosed by the record, show that relator Was married to Isore Robin in December of 1937 and was separated in January of 1938, apparently for mutual cause or fault, the wife thereafter living with her parents, where, on September 3, 1938, the child, Laurma Grace Landry, was born. On January 19, 1939, relator’s wife died, and on the 23d day of February following, respondent hav
 
 *897
 
 ing refused to surrender the custody of the child upon relator’s request, these proceedings were instituted.
 

 “It is the well-settled jurisprudence of this state that the courts are not authorized to interfere with a parent’s authority over his children, except if ‘the court is satisfied that he (or she) will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them.’ ” State ex rel. Perdue v. Carkuff et al., 182 La. 920, 162 So. 729. See, also, Ex parte Lincoln, 128 La. 278, 54 So. 818; State ex rel. Martin et al. v. Talbot et ux., 161 La. 192, 108 So. 411; State ex rel. Bethany v. Corley et ux., 172 La. 266, 134 So. 87; and Article 216 of the Revised Civil Code.
 

 “The law clearly makes it the
 
 privilege and the duty of the father
 
 to rear and provide for his children. ,* * * We have held: A judge has some discretion over the care and custody of children; but it has to be exercised on solid and substantial grounds. Nor can the fact that other people are attached to the child, or that the child is attached to other people, or that the ability of other people can better provide for the care, etc., of the child deprive the father of his parental right and authority to have the care and custody of his own child. * * *
 
 The burden is on those resisting the father to show his disqualification and unfitness to have the care and custody of his children.
 
 * * * ‘The discretion to be exercised is not an arbitrary one, but in the absence of any positive disqualification of the father for the proper discharge of his parental duties, he has, as it seems to 'us, a paramount right to the custody of his infant child, which no court is at liberty to disregard. And while we are bound also to regard the permanent interests and welfare of the child, it is to be presumed that its interests and welfare will be best promoted by cont'lining that guardianship which the law has provided until it is made plainly to appear that the father is no longer worthy of the trust. The breaking of the ties which bind the father and the child can never be justified without the most solid and substantial reasons.’ ” Heitkamp v. Ragan et al., 142 La. 81, 76 So. 247, and the authorities therein cited. (Italics ours.)
 

 The trial judge, in his written reasons for judgment, in which he is supported by the majority opinion, stated: “ * * *
 
 there is no doubt under our law that the parents have a perfect right to their children
 
 and under ordinary conditions where a child is two or three years of age or older then there is no doubt in the world but that the law of our state would grant and give that child to the parents unless there was some good reason for not doing so, but
 
 in this case we know that the child is being cared for by its grand-parents and to place it with a sister of the husband and her husband would be really taking a chance not that they would not take care of the child as they thought was correct, but it is really a chance when you take a child six months of age and place it elsewhere
 
 just because the father comes into Court to ask possession of the child, the
 
 *899
 
 Court is not going to grant to the father the possession of this child at this time. * * * ” (Italics ours.)
 

 There is nothing in the majority opinion of this court, or that of the lower court, pointing out any evidence to show'the disqualification or unfitness of relator to have the custody of his infant daughter, which is his by natural right and by the express provisions of the Revised Civil Code, Articles 216 and 250, and none can be found in the record.
 

 The evidence shows that relator comes from good people, is an upright and hardworking young man, a tenant farmer of moderate circumstances, and resides with his sister and brother-in-law. On the other hand, his father-in-law, respondent here, was without employment at the time this suit was tried, and, when employed, earns his living by waiting on tables in restaurants.
 

 The record. further reveals that plaintiff testified that his wife, after leaving him, lived with another man, leaving the inference that she did so at the residence of her mother and father. In this he was not contradicted, even though respondent and his wife and other witnesses also testified in these proceedings. Moreover, the evidence discloses that there is a decided enmity existing between relator, respondent, and respondent’s wife.
 

 The case relied on in the majority opinion, State ex rel. Peter v. Stanga et ux., 161 La. 978, 109 So. 783, is inapplicable. In that case the child whose custody was sought was seven years of age. Its formative years had been spent with the maternal grandparents with the consent of the father, and the court, because “ * * * the exceptional features of this [the] case remove it from the grasp of the codal articles and decisions relied upon by relator * * * ” concluded it was to the best interest of the child to permit it to remain with its grandparents. In this case the child is an infant, its formative years just ahead, and no extenuating circumstances have been either shown or proved that would disqualify the father as the legal and natural custodian of his child, either because of neglect or exposure to improper influences. On 'the contrary, there remains the fact that the grandparents who are seeking to retain custody of the child are the parents with whom the deceased wife stayed while, under the uncontradicted testimony of the relator, she was living in adultery with another man during the months just'prior to the birth of the child.
 

 Besides, I can think of nothing that would do greater injustice to all parties-concerned, including the child, than to allow her to remain until she is two or three years of age with her grandparents, with whom it is only natural a mutual love and attachment will be formed, and to then suddenly place her in the custody of her father, to whom she will probably be a total stranger and against whom she will possibly be influenced and prejudiced in view of the enmity existing between the respondent’s family and the relator.
 

 For the reasons assigned, I respectfully dissent. •